Filed 4/11/23 P. v. Rule CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060460 |
| v. | (Super. Ct. No. 20HF0177) |
| MATTHEW PAUL RULE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Julian W. Bailey, Judge. Affirmed.

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher W. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

As part of a plea bargain, defendant Matthew Paul Rule pleaded guilty to one count of identity theft (Pen. Code, § 530.5, subd. (a))[1] and one count of receiving stolen property with a value exceeding $950 (§ 496, subd. (a)). One of the terms of his plea bargain was payment of restitution to the victim in an amount to be determined. The trial court granted defendant probation, which he later violated, and the court subsequently terminated probation. The court ultimately ordered defendant to pay $12,059.80 in restitution to the victim. Defendant now appeals the amount of the restitution order.

The amount of victim restitution that a court may order and the criteria used to determine that amount differ under California law depending on whether a defendant is granted probation or given a custodial sentence. This appeal poses two questions. First, for purposes of determining the amount of restitution, do we treat this as a case where a defendant was granted probation, despite the fact that probation was terminated? Second, based on the answer to the first question, was the amount of restitution an abuse of discretion?

Based on the relevant statutes and cases interpreting them, the answer to the first question is clearly yes. And based on that answer, it readily follows that the court did not abuse its discretion in setting the amount of restitution. Accordingly, we affirm the restitution order.

I

FACTS

In October 2019, police responded to a residential burglary in Irvine. The victim reported that a number of items, including watches, debit cards, credit cards, social security cards, and a checkbook had been stolen from a garage. The victim further stated

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

that the garage may have been inadvertently left open the previous evening. The estimated value of the missing watches was $12,709.

On November 1, defendant used the victim's stolen credit card to make a purchase of $419.60 at a store in Laguna Niguel. On December 30, defendant was arrested at a motel, where he had attempted to use a stolen credit card to pay for the room, and was in possession of the victim's driver's license. After further investigation, two of the stolen watches and approximately six checkbooks belonging to the victim and his family were found in a storage locker rented by defendant.

In February 2020, defendant was charged in an amended complaint with committing identity theft (§ 530.5, subd. (a), count one) and receiving stolen property (the watches) with a value exceeding $950 (§ 496, subd. (a), count two). The complaint further alleged defendant had a prior conviction for a serious and violent felony in Texas within the meaning of sections 667, subdivisions (d) and (e)(1) and 1170.12, subdivisions (b) and (c)(1).

Defendant pleaded guilty to counts one and two. The factual basis for the plea was set forth on the plea advisement and waiver form (the *Tahl* form): "(1) 11/1/19 I willfully & unlawfully obtained the personal identifying information of [the victim] & did unlawfully use it to obtain goods without the consent of [the victim] & (2) on 1/8/20 I willfully & unlawfully possessed personal property belonging to another that I knew had been stolen or obtained by theft in a value over $950." Defendant also initialed the portion of the *Tahl* form that stated he understood the court would order him to pay restitution on counts one and two, "in the amount of $ [to be determined], or in an amount to be determined by the Probation Department. If I disagree with the amount of restitution determined by the Probation Department, I may request a court hearing to determine the amount of restitution."

At the sentencing hearing in February 2020, the court exercised its discretion to strike the prior conviction pursuant to section 1385. The court suspended

imposition of sentence and imposed a probation term of three years, to include 364 days in county jail and subject to various other conditions. Among those conditions was payment of restitution in an amount to be determined.

In July 2020, according to the court's minutes, defendant failed to report to the probation department. Probation was revoked and a bench warrant issued. In October, defendant admitted the violation. The court terminated probation and sentenced him to 16 months in state prison, reserving the issue of restitution to the victim.

In November, at a hearing on a petition for state prison credits, the parties stipulated to deem defendant's sentence served. The court ordered his release and to report to the Department of Parole Operations within 72 hours of release.

The parties prepared and served briefs on the restitution issue between November 2020 and April 2021. The prosecution sought restitution for the full amount of the victim's losses for the burglary, totaling $12,059.80 plus interest from the date of the loss. The defense did not suggest a particular amount, but asked the court to deny restitution for the unrecovered personal items.

After several continuances, the restitution hearing began in April 2021. The court received several exhibits into evidence, including a set of documents from the probation department and the police reports. The court ruled that "there is sufficient nexus between the crimes for which this defendant was [convicted] and the restitution claim in the amount of $12,059.80." This figure was apparently comprised of $419.60 for the November 1, 2019 purchase using the victim's credit card, with the remaining amount reflecting unrecovered property from the victim's garage.

Defendant now appeals.

4

II

DISCUSSION

Defendant argues the restitution order should be reversed as to the value of the unrecovered stolen property (specifically, the missing watches, valued at $11,640.20) because he was not charged with or convicted of stealing them.

*Standard of Review*

To the extent this appeal requires interpretation of a statute or other issue of law, our review is de novo. (*People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1191.) Where a restitution order is authorized by law, the amount of the order is reviewed for abuse of discretion. (*Ibid.*) "'""When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court."'"'" (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.)

*Relevant Law*

California law recognizes two different bases for restitution orders. The first is restitution required under Proposition 8 and section 1202.4. The second is restitution ordered as a condition of probation pursuant to section 1203.1.

The first basis for a restitution order applies where a defendant is *not* granted probation, as discussed in *People v. Martinez* (2017) 2 Cal.5th 1093, 1098, 1101 (*Martinez*). "Under the California Constitution, as amended in 1982 by Proposition 8 (commonly known as The Victims' Bill of Rights), every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime. (Cal. Const., art. I, § 28, subd. (b)(13).)" (*Id.* at p. 1100.) "In passing Proposition 8, the electorate expanded victims' access to compensation by declaring an 'unequivocal intention . . . that all persons who suffer losses as a result of criminal activity shall have

5

the right to restitution from the persons convicted of the crimes for losses they suffer,' and instructing the Legislature to adopt legislation to implement this directive." (*Ibid.*)

The implementing legislation, currently codified in section 1202.4, states: "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1). "The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay . . . : [¶] . . . [¶] Restitution to the victim or victims, if any, . . . which shall be enforceable as if the order were a civil judgment." (§ 1202.4, subd. (a)(3).) The restitution order, which is set by the court, "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).)

The amount of restitution, as the statute states, is directly connected to the crime or crimes for which the defendant was convicted. *Martinez* involved a traffic collision between Martinez, who was driving a truck, and a child riding a scooter. Martinez was charged with, and pleaded guilty to, one felony count of fleeing the scene of an injury accident pursuant to Vehicle Code section 20001, subdivision (a). (*Martinez*, *supra*, 2 Cal.5th at p. 1098.) Information contained in police reports and statements at the sentencing hearing conflicted as to whether Martinez or the child was at fault for the accident. (*Id.* at pp. 1098-1099.) The trial court made no factual findings regarding Martinez's responsibility for the accident, but ordered Martinez to pay the victim's medical expenses. (*Id.* at p. 1099.) The appellate court reversed, and the California Supreme Court affirmed the reversal. (*Id.* at pp. 1099, 1108.)

The court in *Martinez* noted that the occurrence of an injury accident was not an element of the crime of fleeing an injury accident and no degree of fault was required for a conviction. (*Martinez, supra,* 2 Cal.5th at pp. 1102-1103.) For this reason, restitution under section 1202.4 was limited to losses incurred as a result of the

6

defendant's flight from the accident scene, but not losses incurred as a result of the accident itself. (*Id.* at p. 1103.) "Section 1202.4 does not . . . permit courts to order direct victim restitution for losses that occur as a result of an underlying accident that involves no criminal wrongdoing." (*Id.* at p. 1107, fn. omitted.) *Martinez* acknowledged, however, that "[a] different result might obtain if the defendant's crimes included an offense" of driving under the influence that caused the accident or resulted in the victim's injuries. But Martinez had not been charged with such an offense, and accordingly, restitution was permitted only with respect to the crime for which Martinez had been convicted. (*Id.* at p. 1107, fn. 3.)

The court in *Martinez* noted that restitution under section 1202.4 was different than the second basis for victim restitution, which is restitution ordered as a condition of probation. (*Martinez*, *supra*, 2 Cal.5th at p. 1101.) The court cited its decision in *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 (*Carbajal*), which held: "[i]n granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety," including the power to "regulate conduct 'not itself criminal'" but "'reasonably related to the crime of which the defendant was convicted or to future criminality.'" "This discretion, we noted, has long been held to include the power to order restitution 'even when the loss was not necessarily caused by the criminal conduct underlying the conviction,' including in cases in which 'the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal.'" (*Martinez*, at p. 1101.)

The court continued: "We held in *Carbajal* that this power was unaffected by the passage of Proposition 8 or its implementing legislation, neither of which manifested an intent to abrogate courts' discretion to order restitution as a condition of probation 'where the victim's loss was not the result of the crime underlying the defendant's conviction, but where the trial court finds such restitution will serve' the

7

purposes of probation. [Citation.] A trial court's power to order restitution in probation cases is thus broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence." *Martinez, supra*, 2 Cal.5th at p. 1101.)

In *Carbajal,* the defendant hit a parked car and fled the scene without leaving a note. (*Carbajal*, *supra*, 10 Cal.4th at p. 1119.) As relevant here, Carbajal pleaded no contest to one count of violating Vehicle Code section 20002, and the court placed him on probation. The trial court denied the prosecution's request to require the defendant to pay restitution, but the appellate division reversed, finding the trial court had discretion to order the defendant to pay restitution. The California Supreme Court affirmed the appellate division's ruling. (*Carbajal*, at pp. 1119-1120.)

The court held: "In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to . . . section 1203.1."[2] (*Carbajal*, *supra*, 10 Cal.4th at p. 1120.) "Restitution has long been considered a valid condition of probation. [Citation.] [S]ection 1203.1 requires trial courts to 'consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund,' and requires the court to 'provide for restitution in proper cases.' [Citation.] California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction." (*Id.* at p. 1121, fn. omitted.)

Ordering restitution in a probation case is therefore proper if "the restitution condition [is] reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.)

---

[2] Section 1203.1, subdivision (a)(3), states: "The court shall provide for restitution in proper cases. The restitution order shall be fully enforceable as a civil judgment forthwith and in accordance with Section 1202.4 of the Penal Code."

In *Carbajal*, the court found that ordering restitution met both conditions. It was reasonably related to the crime for which Carbajal was convicted because the goal of Vehicle Code section 20002 was to "'provide the owners of property damaged in traffic accidents with the information they need to pursue their civil remedies.'" (*Carbajal.* at p. 1124.) "By leaving the scene of the accident, the fleeing driver deprives the nonfleeing driver of his or her right to have responsibility for the accident adjudicated in an orderly way according to the rules of law. This commonly entails a real, economic loss, not just an abstract affront. Among other things, the crime imposes on the nonfleeing driver the additional costs of locating the fleeing driver and, in some cases, the total costs of the accident." (*Ibid.*)

The *Carbajal* court also found restitution related to deterring future criminality. "By seeking to force the defendant to accept the responsibility he attempted to evade by leaving the scene of the accident without identifying himself, the restitution condition acts both as a deterrent to future attempts to evade his legal and financial duties as a motorist and as a rehabilitative measure tailored to correct the behavior leading to his conviction. A trial court may reasonably determine that a restitution order to pay the person whose property was damaged in the accident is better suited to the rehabilitation of the probationer than an order to pay the Restitution Fund." (*Carbajal*, *supra*, 10 Cal.4th at p. 1124.)

Thus, in sum, there are two different kinds of victim restitution orders that have very different parameters. A direct victim restitution order under section 1202.4, which applies when the defendant was not granted probation, is limited to "losses resulting only from the criminal conduct supporting the crimes of which the defendant was convicted." (*People v. Dimacali* (2019) 32 Cal.App.5th 822, 839; *Martinez, supra*, 2 Cal.5th at p. 1103.) In contrast, a restitution order made pursuant to a grant of probation need only be "reasonably related" to the defendant's crimes or to deterring future criminal behavior. (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.)

9

*Type of Restitution Order at Issue*

Although defendant was originally granted probation, his probation was revoked when he failed to report, and he was subsequently given a state prison sentence, which was later deemed served.

At the hearing on the restitution order, the court stated "there is sufficient nexus between the crimes for which this defendant was [convicted] and the restitution claim in the amount of $12,059.80." Based on this language, which is similar to the "reasonably related" language in *Carbajal*, it appears the trial court was ordering victim restitution pursuant to the standard in probation cases, rather than under section 1202.4, subdivision (f).

Defendant argues this was error, first claiming he was ordered to pay restitution under section 1202.4 and as a condition of probation. But the references to 1202.4 in the record pertain to mandatory state restitution fines, not direct victim restitution. Restitution orders for those on probation, according to section 1203.1, "shall be . . . in accordance with Section 1202.4 . . ." Thus, ordering mandatory fines pursuant to section 1202.4 was appropriate.

With respect to victim restitution, our interpretation of the record is that the court ordered victim restitution as part of defendant's agreement to pay such restitution in his plea bargain. We therefore review whether the court's decision to treat this as a probation case, for restitution purposes, was appropriate after probation was revoked.

Defendant argues that where probation is revoked, "the rationale for giving courts broader authority to impose [victim] restitution," "incentivized by continued probation," disappears. He cites *Martinez*, *supra*, 2 Cal.5th at pp. 1101-1102, for this proposition, but we do not find that the cited portion supports defendant's point, and he offers no other authority for this contention.

The argument that once probation is ended due to a violation, the court no longer has the authority to enter or enforce a restitution order is squarely addressed in

10

*People v. Kleinman* (2004) 123 Cal.App.4th 1476, 1481 (*Kleinman*).) In *Kleinman*, the defendant pled no contest to a vehicular hit and run in violation of Vehicle Code section 20001, subdivision (a). The court sentenced Kleinman to two years in state prison, but suspended execution and placed appellant on probation for three years on terms and conditions, including the term that he pay restitution to the victim. (*Kleinman*, at pp. 1478-1479.) The court did not set the restitution amount at the sentencing hearing, stating the victim needed "a little more time to put his numbers together. But you are going to pay direct restitution to [the victim] at the amount calculated by the probation department . . . ." (*Id.* at p. 1479.)

Some time later, Kleinman violated his probation terms. The court summarily revoked probation and issued a bench warrant. Kleinman eventually waived the right to a probation violation hearing, and the trial court ordered him to serve the previously ordered two-year prison term with credits. It also ordered him to pay $9,000 in direct restitution to the victim. (*Kleinman*, *supra*, 123 Cal.App.4th at p. 1479.)

Kleinman's only argument on appeal was that "'after appellant's probation was revoked and he was sentenced to state prison, the $9K restitution order was no longer authorized.'" (*Kleinman, supra,* 123 Cal.App.4th at p. 1479.) The court squarely rejected this contention. (*Id.* at pp. 1479-1481.) The court noted: "Victim restitution is . . . mandatory, and a sentence without a restitution award is invalid. [Citation.] It must be ordered in every case where the defendant is convicted, even if the defendant is placed on probation," citing section 1203.1, subdivision (a)(3). (*Kleinman*, at p. 1480.) The court reviewed the holding in *Carbajal,* noting the broad discretion it granted judges to impose restitution orders even for conduct not directly caused by the defendant's crime. (*Id.* at pp. 1480-1481.)

The *Kleinman* court found the termination of probation did not end the court's power to impose victim restitution under the original plea agreement. "[T]he restitution order was made when appellant was placed on probation, under the authority

of *Carbajal,* which appellant concedes was proper. When appellant's probation was revoked, his restitution order, proper when issued, was not terminated. [S]ection 1202.4, subdivision (m) provides: 'In every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to this section a condition of probation. *Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation shall continue to be enforceable by a victim pursuant to Section 1214 until the obligation is satisfied.*' (Italics added.) So long as restitution is ordered as a probation condition, and is proper as such, it survives revocation of probation." (*Kleinman, supra,* 123 Cal.App.4th at p. 1481.)

The same is true here. Because defendant accepted the plea bargain, he was bound by its terms, and he cannot use breaking those terms to his advantage. "Probation itself is an act of clemency." (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1474.) Defendant specifically agreed that the court would enter a victim restitution order, and under the relevant statutes, that order survives. "Having voluntarily agreed to the terms of probation, a defendant cannot use his own breach of those terms as a basis for evading the properly imposed restitution obligation he assumed. A probationer is not entitled to be rewarded by virtue of his violation of a probation condition." (*Kleinman*, *supra*, 123 Cal.App.4th at p. 1481.) Accordingly, we find the court did not error in treating the restitution order as one made as part of a grant of probation.

*Amount of Restitution Order*

The defendant next contends that even under the court's broad authority to order restitution as part of a grant of probation, the order here runs afoul of *Carbajal* because it is not "'reasonably related to the crime of which the defendant was convicted or to future criminality.'" (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.) We disagree.

The restitution order here was reasonably related to the crimes of identity theft and receiving stolen property. "There is no requirement the restitution order be

limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Anderson* (2010) 50 Cal.4th 19, 27.)

Under the abuse of discretion standard, the court could reasonably find that the recovery of numerous items belonging to the victim in defendant's possession, including identity documents, checks, and two of the missing watches – meant that defendant had a strong link to the original burglary. He may not have committed it, but he directly benefitted from it.[3] The reasonable relation test was therefore satisfied. Moreover, holding defendant culpable for his actions by requiring him to pay restitution for the victim's losses would, hopefully, deter future criminal acts. We find no abuse of discretion in the court's restitution order.

III

DISPOSITION

The restitution order is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

---

[3] We reject defendant's suggestion that substantial evidence he was directly involved in the burglary is necessary to uphold the order. Such evidence is not required under *Carbajal* or subsequent cases, and defendant's attempted analogy turns the standard of review on its head.